1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ERICK HUFF,

11            Petitioner,                      2: 08 - cv - 3053 - JAM TJB

12        vs.

13    WARDEN MARTEL,

14            Respondent.              FINDINGS AND RECOMMENDATIONS

15    _____/

16                              I. INTRODUCTION

17        Petitioner is a state prisoner proceeding *pro se* with an application for writ of habeas

18    corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction for attempted

19    murder, assault with a deadly weapon, burglary and robbery. He seeks relief on several grounds,

20    specifically that: (1) prejudicial error occurred when the trial court admitted evidence of other

21    instances of domestic violence by the Petitioner against the victim ("Claim I"); (2) prejudicial

22    error occurred when the trial court admitted prior acts of domestic violence by the Petitioner

23    against the victim that had not been disclosed to defense counsel by the prosecution before trial

24    ("Claim II"); (3) trial counsel was ineffective for failing to object to the admission of certain

25    other instances of domestic violence by the Petitioner against the victim ("Claim III"); (4) the

26    cumulative effect of his first three claims warrants reversal of Petitioner's convictions ("Claim

                                        1

1  IV"); (5) Petitioner was denied his federal constitutional right to a fair trial when the trial court

2  failed to clarify in the jury instructions that the "force" used in a robbery must be used to

3  effectuate that robbery ("Claim V"); (6) trial counsel was ineffective for failing to object to the

4  trial court's jury instructions on robbery and/or should have requested a more detailed pinpoint

5  jury instruction so that the jury was specifically instructed that the "force" used in the robbery

6  was used to effectuate that robbery ("Claim VI"); (7) the attempted murder conviction lacked

7  sufficient evidence ("Claim VII"); (8) the trial court failed to properly instruct the jury on

8  attempted murder, specifically the "intent" requirement ("Claim VIII"); and (9) trial counsel was

9  ineffective for failing to object to the trial court's jury instruction on attempted murder ("Claim

10  IX"). Upon careful review of the record and the applicable law, the undersigned will recommend

11  that Petitioner's habeas petition be denied.

12  ## II. FACTUAL BACKGROUND[1]

13  In October 2004, Jeanetta Anderson lived with her "cousin's
   baby's mother" Tanya Kennedy at Kennedy's apartment.
14  Anderson was dating defendant, and they planned to move into an
   apartment of their own on November 2, 2004. The "move-in"
15  costs for the apartment were approximately $612.

16  On November 1, 2004, Anderson purchased money orders totaling
   $612.50 and placed them in her purse. Defendant knew she had
17  the money orders because she showed them to him.

18  That evening, Anderson and defendant watched a movie at
   Kennedy's apartment. Kennedy was not home, but she telephoned
19  the apartment every 10 or 20 minutes to see if Anderson's cousin
   had called. Kennedy's calls angered defendant. He told Anderson
20  "he wanted his time," which meant he wanted to have sex. When
   Anderson's cousin telephoned around midnight and Anderson
21  answered, defendant punched Anderson in the face, blackening her
   eye and cutting her lip. Anderson told defendant to "get out," and
22  he eventually left.

23  At approximately 8:00 a.m. the next morning (November 2, 2004),
   defendant returned to Kennedy's apartment. He said he had
24

25  [1] This statement of facts is taken from the January 22, 2008 opinion by the California
   Court of Appeal for the Third Appellate District (hereinafter "Slip. Op."), lodged as document 3
26  by the Respondent and filed with this Court on July 10, 2009.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

forgotten his wallet. Anderson retrieved his wallet while he waited outside. As she handed him his wallet, he told her that if he saw her with another man "he was going to kill" her and the other man. He also told her he had cheated on her. She responded by calling him a "dirty dog" and a "nasty bitch," and he kicked in the door.

Anderson ran toward the telephone, intending to call 911, however, defendant "snatched it" and said, "Bitch, I'm going to kill you," grabbed a butcher knife off the kitchen counter, and began stabbing her. After he stabbed her four times, the knife broke off in her arm. He then kicked her on her right side, grabbed her purse, which contained the money orders, and ran out the door.

After removing the knife blade from her arm, Anderson crawled down the steps towards a downstairs apartment. A neighbor found her there and called for help.

Anderson sustained numerous stab wounds to her arms and legs, including a five-inch-long "deep cut" to her right calf and a six-inch-long "deep cut" to her right thigh. She also suffered cuts to her hands while attempting to defend herself. She required a blood transfusion and was hospitalized for three or four days as a result of her injuries.

At approximately 9:00 a.m. that same morning, defendant was found hiding in some bushes in a field near Kennedy's apartment. Anderson's purse and the money orders were found in a duffle bag next to defendant . . .

Prior to trial, the People moved under Evidence Code section 1109 to admit evidence regarding an incident in September 2004 (September 2004 incident). According to the People, the incident occurred while defendant and Anderson were living with Anderson's adult niece, Shenelle Carter. "[Carter] heard a thump coming from a bedroom. She went to investigate. She saw . . . Anderson and [defendant] inside the bedroom. [Anderson] had blood all over her face. [Carter] also observed blood on [Anderson's] clothes, the wall, and the bed. [Defendant] admitted to [Carter] that he 'did it.'" Defendant conceded the September 2004 incident was admissible "[s]ubject to foreseeable hearsay objections" and the People establishing he and Anderson were in a "domestic relationship." The trial court ruled the incident was admissible, finding "[i]t would be close in time, and it sounds as if there is some witness that may testify to it." The court added, "Of course, it may be hearsay objected to."

At trial, Anderson testified, without objection, concerning another incident that occurred in approximately August 2004, while she lived in an apartment on Howe Avenue (Howe Avenue incident). Defendant, who had been staying with Anderson "seven days" a week, punched her in the face several times, leaving her with a

3

black eye, "busted" lip, and bruises. During cross-examination, Anderson denied striking or biting defendant during this incident. The parties later stipulated "that [on] August 16, 2004, at 3:52 a.m. at [a residence on] Howe Avenue, [the] Sacramento County Sheriff's Department responded to a 911 hang-up call. The deputies knocked on the door, and a young girl answered. She was later identified as [A.S.]. [A.S.] pointed to the back bedroom and said, 'They're in there.' [A.S.] opened the bedroom door and revealed a man standing just inside the door. He was identified as [defendant]. A female was standing behind him in the room. She identified herself as Jeanetta Anderson. [Defendant] had several human bite marks on the left side of his body, and [Anderson's] face was covered in blood." The stipulation was read to the jury.

Carter testified concerning a third incident. During cross-examination, defense counsel asked her whether she had "ever gotten mad at [defendant] before," and she responded: "When he tried to make us hit other cars when he was choking [Anderson] . . . . That's the only time I got mad at him" (car incident). The People followed up on Carter's testimony concerning the car incident during redirect. Without objection, Carter explained that sometime after the September 2004 incident, she, Anderson and defendant were riding in a car; Anderson was driving and defendant was sitting in the passenger seat. Anderson and defendant began arguing, and defendant attempted to make the car run into other cars by pulling on the steering wheel. Defendant then attempted to choke Anderson, Anderson elbowed him, and they began fist fighting. Anderson eventually pulled over, and defendant got out and started walking . . .

Defendant did not testify at trial. The defense did not dispute that defendant stabbed Anderson. Rather, the defense argued, among other things, that defendant (1) did not intend to kill Anderson when he stabbed her in her extremities; and (2) was not guilty of robbery because the force he used was not administered to effectuate the taking of the purse.

(Slip. Op. at p. 2-7 (footnotes omitted).)

## III. PROCEDURAL HISTORY

After a jury trial, Petitioner was convicted of attempted murder, assault with a deadly weapon, residential burglary, robbery and that Petitioner inflicted great bodily injury and used a deadly and dangerous weapon. Petitioner was sentenced to twenty-four years imprisonment. Petitioner appealed to the California Court of Appeal, Third Appellate District. In his appeal, Petitioner raised Claims I-VI in his appellate brief. The California Court of Appeal affirmed the

4

1 | judgment on January 22, 2008. The California Supreme Court denied Petitioner's petition for

2 | review on April 9, 2008 without comment.[2] Petitioner filed his federal habeas petition in this

3 | Court on February 20, 2009 raising the same claims as he did before the state courts.[3]

4 | IV. APPLICABLE LAW AND FEDERAL HABEAS STANDARD

5 | The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

6 | 2254 governs the instant petition because it was filed after April 24, 1996. Federal habeas corpus

7 | relief is not available for any claim decided on the merits in state court proceedings unless the

8 | state court's adjudication of the claim:

9
10 | (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

11
12 | (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

13 | 28 U.S.C. § 2254(d).

14

15 | [2] A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. See 28 U.S.C. §
16 | 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.
17 | See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005). Petitioner only raised Claims I, II and V to the California Supreme Court on direct
18 | appeal. Because Claims III, IV, VI, VII, VIII, and IX were not raised in Petitioner's petition for review to the California Supreme Court, they are deemed unexhausted. Nevertheless,
19 | unexhausted claims may "be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State." 28 U.S.C. § 2254(b)(2). A federal court
20 | considering a habeas corpus petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

21

22 | Additionally, Claims VII-IX are found within Petitioner's handwritten "Ex. D" which he attached to his federal habeas petition. This Court will consider Claims VII-IX as if they were
23 | raised by Petitioner in his federal habeas petition because the pleadings of *pro se* litigants are held to a less stringent standard than pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

24

25 | [3] Petitioner attached the majority of his appellate brief that was filed on direct appeal with the California Court of Appeal as an exhibit to his federal habeas petition. As evidence that
26 | Petitioner wanted this brief incorporated into his actual habeas petition, the Petitioner crossed out where the brief said "appellant" and changed it to "Petitioner."

5

1    If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

2  court must conduct a *de novo* review of a petitioner's habeas claims. See Delgadillo v.

3  Woodford, 527 F.3d 919, 925 (9th Cir. 2008). The court looks to the last reasoned state court

4  decision as the basis for the state court judgment. See Alvila v. Galaza, 297 F.3d 911, 918 (9th

5  Cir. 2002). If a state court reaches a decision on the merits but provides no reasoning to support

6  its conclusion, a federal habeas court independently reviews the record to determine whether

7  habeas corpus relief is available under § 2254(d). See Larson v. Palmateer, 515 F.3d 1057, 1062

8  (9th Cir. 2010).

9                          V. PETITIONER'S CLAIMS FOR REVIEW

10    A. Claims I, II and III, IV

11    In these four claims, Petitioner asserts that: (1) prejudicial error occurred when the trial

12  court admitted evidence of other instances of domestic violence by the Petitioner against the

13  victim (Claim I); (2) prejudicial error occurred when the trial court admitted prior acts of

14  domestic violence by the Petitioner against the victim that had not been disclosed to defense

15  counsel by the prosecution before trial (Claim II); (3) trial counsel was ineffective for failing to

16  object to the admission of certain other instances of domestic violence by the Petitioner against

17  the victim (Claim III); (4) the cumulative effect of his first three claims warrants reversal of

18  Petitioner's convictions (Claim IV).[4] The California Court of Appeal stated the following with

19  respect to these claims:

20              Defendant contends the trial court erred in admitting evidence
                concerning the September 2004 incident because "[t]here was no
21              evidence [he] was tried or convicted of this prior incident." He
                claims that he was prejudiced by the error in that "[h]ad the jury
22              not heard the evidence of the [September] 2004 offense, it may

23
     ⁴ Petitioner used his appellate brief to the California Court of Appeal as his template for
24  his federal habeas petition. In that appellate brief which this Court deems incorporated into
     Petitioner's habeas petition, Petitioner's cumulative error claim only related to the cumulative
25  effect of the first three claims (Claims I, II and III of Petitioner's federal habeas petition). For
     purposes of analyzing Petitioner's cumulative error claim in his federal habeas petition, this
26  Court will only analyze the purported cumulative error claim as it relates to Claims I, II and III.

                                                    6

1    well have agreed with the defense theory that since [Anderson] was
     cut only on her limbs, it showed [defendant] did not intend to kill
2    her." Defendant also contends the court erred in admitting
     evidence concerning the Howe Avenue and car incidents because
3    those incidents "had not been revealed to [defense] counsel [prior
     to] trial." He claims that he was prejudiced by the People's failure
4    to disclose this evidence prior to trial because "he thus had no
     chance to investigate and prepare cross-examination, or to present
5    any rebuttal evidence" concerning those incidents. He further
     asserts that "by hearing evidence of even more violent acts, the
6    jury's passions were likely inflamed." As we shall explain,
     defendant forfeited these claims by failing to preserve them for
7    appellate review. Anticipating our ruling, defendant asserts that
     the failure to preserve the issues constituted ineffective assistance
8    of counsel. Because defendant did not dispute that he stabbed
     Anderson, he cannot establish that he was prejudiced by the
9    admission of evidence concerning his prior acts of domestic
     violence. Accordingly, his ineffective assistance claim must fail . .
10   .

11        Defendant conceded at trial that evidence of the September 2004
          incident was admissible, "[s]ubject to foreseeable hearsay
12        objections" and the People establishing that he and Anderson were
          in a "domestic relationship." At no point did he argue that the
13        evidence was inadmissible because there was no evidence he was
          tried and convicted as a result of the September 2004 incident. By
14        failing to do so, he forfeited this claim on appeal. (People v.
          Partida, (2005) 37 Cal. 4th 428, 435 (Partida) ["If the court
15        overrules the objection, the objecting party may argue on appeal
          that the evidence should have been excluded for the reason asserted
16        at trial, but it may not argue on appeal that the court should have
          excluded the evidence for a reason different from the one stated at
17        trial."]; People v. Raley, (1992) 2 Cal. 4th 870, 892.)

18        Defendant likewise failed to object to the admission of evidence
          concerning the Howe Avenue[5] or the car incidents.[6] Again, his
19

20
          [5] The California Court of Appeal also explained in a footnote that, "To the contrary, he
21   stipulated to the admission of evidence concerning the Howe Avenue incident. Defendant
     asserts that he was simply "making the best of a bad situation." (Slip. Op. at p. 8 n.4.)
22
          [6] In another footnote, the California Court of Appeal noted with respect to the car incident
23   that:

24             Evidence concerning the car incident was first admitted during
               *defense* counsel's cross-examination of Carter. Thus, while the
25             People are required to "disclose the evidence to the defendant" of
               prior domestic violence to be introduced at trial prior to trial,
26             absent a showing of good cause "why a disclosure should be

                                           7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

failure to object forfeits any claim he may have regarding the
introduction of that evidence . . .

Defendant asserts the failure to object constituted ineffective
assistance of counsel. In order to demonstrate ineffective
assistance of counsel, defendant must show counsel's actions were,
objectively considered, both deficient under prevailing professional
norms and prejudicial. (Strickland v. Washington (1984) 466 U.S.
668, 687 [80 L.Ed.2d 674, 693].) We need not determine whether
counsel's performance was deficient if we can dispose of the
ineffectiveness claim on the ground of lack of sufficient prejudice.
(Id. at p. 697 [80 L.Ed.2d at p. 699.) To establish prejudice, a
defendant must show "counsel's errors were so serious as to
deprive [him] of a fair trial, a trial whose result is reliable." (Id. at
p. 687 [80 L.Ed.2d at p. 693].) As we shall explain, defendant
cannot demonstrate prejudice and thus cannot establish a viable
claim of ineffective assistance of counsel. The trial court
instructed the jurors in accordance with CALIC No. 2.50.02 that if
they were convinced by a preponderance of the evidence that
defendant committed a prior offense involving domestic violence,
they could, but were not required to, infer that he was "likely to
commit and did commit *the crime . . . of which he is accused.*"
The jury was further instructed that it could "not consider this
evidence for any other purpose." "[a]ny possibility the jury might
have misunderstood the purpose of [the prior acts] evidence was
obviated by the limiting instruction, which we presume the jury
understood and followed." (People v. Panah, (2005) 35 Cal. 4th
395, 492.)

When considered as a whole and in the context of the case, it is
clear that the instruction's reference to "the crime . . . of which he
is accused" referred to the act of domestic violence of which
defendant stood accused, namely, stabbing Anderson with a knife,
and not the crime of attempted murder. Thus, the most the jury
could have inferred from the evidence that defendant committed
prior acts of domestic violence is that defendant was likely to and
did stab Anderson, which is precisely what the People argued to
the jury: "[i]f you think by 51 % or more that [defendant]
committed the act of the choking [(the car incident)] or the head
butting [(the September 2004 incident)] or the punching [(the
Howe Avenue incident)] on the prior occasions, then what you are
able to do, but you don't have to, you are permitted . . . to infer that
he had the disposition towards committing further acts of domestic
violence, like in this particular case." Defendant, however, did not

denied, restricted, or deferred," they cannot be said to have violated
the notice requirement where they do not "introduce" the evidence.

(Slip. Op. at p. 9 n.5 (internal citations omitted).)

8

1

2

3

> (and does not) dispute that he stabbed Anderson. Accordingly, he cannot establish that he was prejudiced by the admission of evidence concerning the September 2004, the Howe Avenue or the car incidents, and his claim of ineffective assistance of counsel therefore fails.[7]

4

5

6

> Given our conclusion that defendant forfeited his challenge to the admission of evidence concerning his prior acts of domestic violence, and, in any event, cannot establish that he was prejudiced by its admission, his contention that the cumulative effect of the trial court's errors in admitting the evidence necessarily fails.

7

(Slip. Op. at p. 7-11.)

8

9

Initially, to the extent that Petitioner's claim alleges that the admission of the other

10

domestic violence incidents into evidence was improper (Claim I) under the California Evidence

11

Code, Petitioner raises a state law claim that is not cognizable on federal habeas review. See

12

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal

13

habeas court to reexamine state-court determinations of state-law questions). Instead, evidence

14

erroneously admitted into evidence warrants habeas relief only when it results in a denial of a

15

fundamentally fair trial in violation of the right to due process. See Briceno v. Scribner, 555 F.3d

16

1069, 1077 (9th Cir. 2009) (quoting Estelle, 502 U.S. at 67-68). The due process inquiry in

17

federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it

18

rendered the trial fundamentally unfair. See Payne v. Tennessee, 501 U.S. 808, 825 (1991). The

19

category of infractions that violate "fundamental fairness" has been defined very narrowly. See

20

Estelle, 502 U.S. at 73. In Holley v. Yarbororugh, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal

21

22

---

[7] The California Court of Appeal also stated in a footnote that:

23

24

25

> To the extent defendant contends the admission of evidence concerning the September 2004, the Howe Avenue and the car incidents violated his right to due process, his contention fails because, for the reasons previously discussed, its admission did not make his trial "fundamentally unfair." (Partida, supra, 37 Cal. 4th at p. 436.)

26

(Slip. Op. at p. 11-12 n.8.)

9

1    citation omitted), the Ninth Circuit explained that:

2               The Supreme Court has made very few rulings regarding the
                admission of evidence as a violation of due process. Although the
3               Court has been clear that a writ should be issued when
                constitutional errors have rendered the trial fundamentally unfair, it
4               has not yet made a clear ruling that admission of irrelevant or
                prejudicial evidence constitutes due process.
5

6    Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an

7    evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended by 421

8    F.3d 1154 (9th Cir. 2005).

9           Petitioner does argue that the admission of the Howe and car domestic violence incidents

10   violated his due process rights. As noted above, the evidence was permitted pursuant to

11   California Evidence Code § 1109 which permits evidence of a defendant's prior domestic

12   violence in a prosecution for an offense involving domestic violence. Petitioner relies on pre-

13   AEDPA cases such as McKinney v. Rees, 993 F.3d 1378 (9th Cir. 1993) in support of his request

14   for habeas relief in Claim I. However, for purposes of this habeas petition, Petitioner has not

15   demonstrated that the state court's decision was "contrary to, or involved an unreasonable

16   application of clearly established Federal law, as determined by the Supreme Court of the Untied

17   States." 28 U.S.C. § 2254(d)(1). The Supreme Court has yet to rule on whether propensity

18   evidence admitted in a criminal trial pursuant to state law violates the Due Process Clause. See

19   Estelle, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether state law would violate the Due

20   Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a

21   charged crime."). Accordingly, since the Supreme Court has not clearly established that use of

22   propensity evidence in a criminal trial violates due process, a state court's decision on the matter

23   cannot be contrary to or an unreasonable application of Supreme Court precedent under AEDPA.

24   See Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006) (denying due process claim upon

25   the use of propensity evidence for want of a "clearly established" rule from the Supreme Court);

26   see also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008). Thus, Petitioner is not entitled to

10

1    relief on Claim I.[8]

2         In Claim II, Petitioner asserts prosecutorial misconduct in failing to disclose to the
3    defense that it would introduce evidence concerning the Howe Avenue and car domestic violence
4    incidents at trial. He argues that their admission prejudiced his trial regarding his attempted
5    murder conviction. The California Court of Appeal determined that Petitioner forfeited his
6    opportunity to challenge the admission of these prior domestic violence incidents because he
7    failed to object at trial. Respondent asserts that Petitioner failed to object to the introduction of
8    this evidence at trial so that this Claim is now procedurally defaulted.

9         A state court's refusal to hear the merits of a claim because of the petitioner's failure to
10   follow a state procedural rule is considered denial of relief on an independent and adequate state
11   ground. See Harris v. Reed, 489 U.S. 255, 260-61 (1989). The state rule for these purposes is
12   only "adequate" if it is "firmly established and regularly followed." Id. (citing Ford v. Georgia,
13   498 U.S. 411, 424 (1991)); see also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o
14   be deemed adequate, the state law ground for decision must be well-established and consistently
15   applied."). The state rule must also be "independent" in that it is not "interwoven with the
16   federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (citing Michigan v. Long,
17   463 U.S. 1032, 1040-41 (1983)). Furthermore, procedural default can only block a claim in
18   federal court if the state court, "clearly and expressly states that its judgment rests on a state
19   procedural bar." Harris, 489 U.S. at 263. This means that the state court must have specifically
20   stated that it was denying relief on a procedural ground. See Ylst v. Nunnemaker, 501 U.S. 797,
21   803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993). In this case, as previously
22   stated, the California Court of Appeal specifically stated that it was denying relief on this claim
23   for Petitioner's failure to object to the admission of the Howe Avenue and car domestic violence

24

25        [8] Additionally, even if this Court could consider Claim I on the merits, for the reasons
     discussed infra with respect to Claims II and III, this claim would be deemed procedurally
26   defaulted due to defense counsel's failure to object to this evidence being admitted at trial.

11

1    incidents at trial.

2         Pursuant to Section 353 of California's Evidence Code, also known as the
3    contemporaneous objection rule, "evidence is admissible unless there is an objection, the grounds
4    for the objection are clearly expressed, and the objection is made at the time the evidence is
5    introduced." Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002). California's
6    contemporaneous objection rule is an independent and adequate state procedural bar where a
7    party has failed to make a timely objection to the admission of the challenged evidence. See
8    Chein v. Shumsky, 323 F.3d 747, 751-52 (9th Cir. 2003). Petitioner makes no showing that the
9    contemporaneous objection rule was not an adequate and independent basis for the state court's
10   decision.

11        Nevertheless, even if the state rule is independent and adequate, the claim may be
12   reviewed by the federal court if the petitioner can show: (1) cause for the default and actual
13   prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the
14   claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 749-50. In
15   Claim III, Petitioner argues that his trial counsel should have objected to the admittance of the
16   Howe Avenue and car domestic violence incidents into evidence based for the reasons outlined
17   in Claims I and II and that this evidence resulted in his attempted murder conviction.

18        "Cause" to excuse default exists if the petitioner "can show that some objective factor
19   external to the defense impeded counsel's efforts to comply with the State's procedural rule."
20   Murray v. Carrier, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may be cause to
21   excuse default only if the procedural default was the result of an independent constitutional
22   violation. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) ("Not just any deficiency in
23   counsel's performance will do, however; the assistance must have been so ineffective as to
24   violate the Federal Constitution."). Thus, "[s]o long as a defendant is represented by counsel
25   whose performance is not constitutionally ineffective under the same standard established in
26   Strickland v. Washington, [466 U.S. 668 (1984)] [the federal courts] discern no inequity in

1  requiring him to bear the risk of attorney error that results in procedural default." Murray, 477
2  U.S. at 488.

3          The Sixth Amendment guarantees effective assistance of counsel. In Strickland, 466 U.S.
4  668, the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.
5  First, the petitioner must show that considering all the circumstances, counsel's performance fell
6  below an objective standard of reasonableness. See id. at 688. Petitioner must identify the acts
7  or omissions that are alleged not to have been the result of reasonable professional judgment.
8  See id. at 690. The federal court then must determine whether in light of all the circumstances,
9  the identified acts or omissions were outside the wide range of professional competent assistance.
10  See id.

11          Second, a petitioner must affirmatively prove prejudice. See id. at 693. Prejudice is
12  found where "there is a reasonable probability that, but for counsel's unprofessional errors, the
13  result of the proceeding would have been different." Id. at 694. A reasonable probability is "a
14  probability sufficient to undermine confidence in the outcome." Id. A reviewing court "need not
15  determine whether counsel's performance was deficient before examining the prejudice suffered
16  by defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an
17  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be
18  followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at
19  697).

20          In this case, it is easier to dispose of Petitioner's ineffective assistance claim on the
21  ground of a lack of sufficient prejudice. Petitioner failed to show prejudice warranting a reversal
22  in his attempted murder conviction in trial counsel's failure to object to the admittance of the
23  Howe Avenue and car domestic violence incidents into evidence. As previously noted in Part II,
24  testimony at trial indicated that Petitioner kicked down the door of the apartment where Ms.
25  Anderson was staying and told her that he was going to kill her. He then grabbed a kitchen knife
26  and proceeded to stab her several times. Petitioner does not show that there was a reasonable

13

1 probability that his conviction for attempted murder would have been different had defense
2 counsel objected to the admittance of these two other domestic violence incidents. Therefore,
3 Petitioner is not entitled to habeas relief on Claim III.

4       Since Petitioner cannot show any prejudice from defense counsel's failure to object to the
5 admission of these two additional other domestic violence incidents, his argument that defense
6 counsel's "ineffectiveness" can overcome the procedural default on Claim II is without merit.
7 Additionally, Petitioner has not presented a credible claim establishing his actual innocence, see
8 Calderon v. Thompson, 523 U.S. 538, 559 (1998), and thus cannot demonstrate that failure to
9 consider the procedurally defaulted Claim II on the merits will result in a fundamental
10 miscarriage of justice. See Coleman v. Thompson, 509 U.S. 722, 729 (1991). Accordingly,
11 Petitioner is not entitled to habeas relief on Claim II.[9]

12       In Claim IV, Petitioner alleges that the cumulative effect of Claims I, II and III require the
13 reversal of his convictions. The California Court of Appeal rejected this claim explaining that
14 Petitioner forfeited his challenge to the admission of evidence concerning his prior acts of
15 domestic violence and that he could not establish that he was prejudiced by their admission into
16 evidence.

17       The Supreme Court has clearly established that the combined effect of multiple trial court
18 errors violates due process where it renders the resulting criminal trial fundamentally unfair. See
19 Chambers v. Mississippi, 410 U.S. 284, 298, 302-03 (1973). "The cumulative effect of multiple
20 errors can violate due process even where no single error rises to the level of a constitutional
21 violation or would independently warrant reversal." Parle v. Runnels, 505 F.3d 922, 927 (9th
22 Cir. 2007) (citing Chambers, 410 U.S. at 290 n.3). "[C]umulative error warrants habeas relief
23 only where the errors have 'so infected the trial with unfairness as to make the resulting
24 conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643

25
26       [9] Additionally, even if this Court were to consider Claim I on the merits, it too would be
     procedurally defaulted.

14

1  (1974). "Such 'infection' occurs where the combined effect of the errors had a 'substantial and
2  injurious effect or influence on the jury's verdict.'" Id. (quoting Brecht v. Abrahamson, 507 U.S.
3  619, 637 (1993)). Thus, "where the combined effect of individually harmless errors renders a
4  criminal defense 'far less persuasive than it might [otherwise] have been,' the resulting
5  conviction violates due process." Id. (quoting Chambers, 410 U.S. at 294). However, if
6  evidence of guilt is overwhelming, errors are considered "harmless" and the conviction will
7  generally be affirmed. See Parle, 505 F.3d at 928.

8  In this case, the evidence of Petitioner's guilt was overwhelming, and thus, this Court
9  cannot say that the "errors" of which Petitioner complains of in Claims I, II and III had a
10  substantial and injurious effect or influence on the jury's verdict. Even assuming that the
11  evidence concerning the Howe Avenue and car domestic violence incidents were not admitted
12  into evidence, the case against Petitioner would have still included evidence sufficient to
13  convince the jury that Petitioner was guilty beyond a reasonable doubt based on the record,
14  particularly the testimony of the victim. Petitioner is not entitled to federal habeas relief on his
15  claim of cumulative error in Claim IV.

16  B.     Claims V & VI

17  In Claim V, Petitioner asserts that the trial court failed to clarify in the jury instructions
18  that the "force" used in a robbery must be used to effectuate that robbery. He argues that the
19  court should have clarified that the larcenous intent by the defendant must coincide or precede
20  the force used. Petitioner alleges that this failure by the trial court constituted a denial of
21  constitutional rights to a fair trial as guaranteed by the due process clause and right to a jury trial
22  with respect to the robbery conviction. Respondent argues that this claim is procedurally
23  defaulted. In Claim VI, Petitioner alleges that trial counsel was ineffective by failing to object to
24  the robbery jury instructions and/or should have requested a more pinpoint instruction.

25  The California Court of Appeal analyzed these two claims in its opinion and stated the
26  following:

15

1    Defendant asserts the trial court erred by failing, sua sponte, to
     "clarify that the force used in a robbery must be used to effectuate
2    the robbery." In defendant's view, the trial court's instructions
     improperly permitted the jury to convict him of robbery based on a
3    finding that he formed the intent to steal Anderson's property after
     he stabbed her. Defendant, however, forfeited the issue by failing
4    to object to the court's instructions or requesting a clarifying
     instruction. Anticipating our ruling, defendant again asserts that
5    the failure to object or request a clarifying instruction constituted
     ineffective assistance of counsel. As we shall explain, the trial
6    court's instructions concerning the use of force were adequate.
     Thus, defendant's ineffective assistance claim must fail . . .

7

8    If defendant wished a clarifying jury instruction on after-acquired
     intent, he should have requested it. (People v. Bolden, (2002) 29
9    Cal. 4th 515, 556-557 (Bolden) [it is incumbent upon a defendant
     to ask for amplifying instructions on after-acquired intent]; People
10   v. Kimble (1988) 44 Cal. 3d 480, 503 [sua sponte instructions are
     required as to the principles of law openly and closely related to the
11   evidence; instructions amplifying an element of an offense are
     required only upon a request].) By failing to request a clarifying
12   instruction, defendant forfeited the issue on appeal. (People v.
     Rodrigues (1994) 8 Cal. 4th 1060, 1140.) . . .

13   Defendant asserts the failure to object to the court's instructions or
     request a clarifying instruction constituted ineffective assistance of
14   counsel. As noted, in order to demonstrate ineffective assistance of
     counsel, defendant must show counsel's actions were, objectively
15   considered, both deficient under prevailing professional norms and
     prejudicial. (Strickland v. Washington, supra, 466 U.S. at p. 687
16   [80 L.Ed.2d at p. 693].) In order to show trial counsel's
     performance was deficient, defendant must show that counsel
17   "failed to act in a manner to be expected of [a] reasonably
     competent attorney [ ] acting as [a] diligent advocate [ ]." (People
18   v. Pope (1979) 23 Cal. 3d 412, 425.) Where, as here, the record
     fails to show why counsel acted or failed to act as he did, the
19   contention fails unless counsel failed to provide an explanation
     upon request or there could be no satisfactory explanation. (People
20   v. Mendoza Tello, (1997) 15 Cal. 4th 264, 266-67; Pope, at p.
     425.) There is a reasonable explanation for counsel's alleged
21   omission; thus, defendant cannot demonstrate his counsel's
     performance was deficient, and his ineffective assistance of
22   counsel claim must fail.

23   As defendant correctly notes, "[t]o support a robbery conviction,
     the evidence must show that the requisite intent to steal arose either
24   before or during the commission of the act of force. [Citation.]
     '[I]f the intent arose only after the use of force against the victim,
25   the taking will at most constitute a theft.' [Citation.] The wrongful
     intent and the act of force or fear 'must concur in the sense that the
26   act must be motivated by the intent.'" (People v. Marshall (1997)

16

1        15 Cal. 4th 1, 34.)

2            Here, the jury was instructed with CALJIC No. 9.40, which defines
         the crime of robbery.  As given, it provides in pertinent part:
3        "Every person who takes personal property in the possession of
         another, against the will and from the person or immediate
4        presence of that person, accompanied by means of force [or] fear
         and with the specific intent permanently to deprive that person of
5        the property, is guilty of the crime of robbery . . .

6            "In order to prove this crime, each of the following elements must
         be proved:
7        "4.  The taking was accomplished either by force or fear; . . . "
         In Bolden, a capital case, the California Supreme Court rejected an
8        argument that the jury instructions on the offense of robbery were
         inadequate because "they failed to state [the] defendant's
9        application of force must have been motivated by an intent to
         steal."  (Bolden, supra, 29 Cal. 4th at p. 555; see also id. at p.
10       556.)  The court found that "[t]he standard jury instructions on
         felony murder (CALJIC No. 8.21) and robbery (CALJIC No. 9.40),
11       which the trial court used to instruct the jury, adequately explain
         that for the crime of robbery the defendant must form the intent to
12       steal before or during rather than after the application of force to
         the victim, and that *the defendant must apply the force for the
13       purpose of accomplishing the taking.*"  (Bolden, at p. 556, italics
         added.)
14
             The italicized statement in Bolden is what defendant claims was
15       missing from the instructions in this case.  (Bolden, supra, 29 Cal.
         4th at p. 556.)  Bolden effectively held that the standard robbery
16       instruction (CALJIC No. 9.40), which was given here, adequately
         covers the issue.  (Bolden, at p. 556, see also People v. Tapia
17       (1994) 25 Cal. App. 4th 984, 1026-28.)

18           "The trial court need not give instructions which are covered by
         other properly given instructions."  (People v. Tapia, supra, 25 Cal.
19       App. 4th at p. 1028.)  Accordingly, the trial court did not err in
         failing, sua sponte, to "clarify that the 'force' used in a robbery
20       must be used to effectuate that robbery."

21           Finally, we reject defendant's contention that defense counsel's
         failure to request a clarifying instruction constituted ineffective
22       assistance of counsel.  Given our analysis, counsel reasonably
         could have concluded that the court's instructions were adequate.
23

24   (Slip. Op. at p. 12-16 (footnotes and ellipses omitted).)

25           The California Court of Appeal found that Petitioner had forfeited Claim V because

26   Petitioner failed to object to the specified jury instructions at trial and/or request a more pinpoint

                                         17

1   jury instruction. California's contemporaneous objection rule is an independent and adequate
2   state procedural bar where a party has failed to make a timely objection. See Chein, 323 F.3d at
3   751-52. By failing to object to the trial court's robbery jury instruction so as to further clarify the
4   "force" issue with respect to a robbery charge, Claim V is procedurally defaulted. See Paulino v.
5   Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (jury instruction claim procedurally barred by
6   virtue of California Court of Appeal's decision finding that claim was waived).

7       Petitioner attempts to overcome this procedural default by arguing that counsel was
8   ineffective for failing to object to the robbery jury instruction and/or for failing to request a more
9   pinpoint jury instruction. As previously stated, ineffective assistance of counsel may be cause to
10   excuse default only if the procedural default was the result of an independent constitutional
11   violation. See Edwards, 529 U.S. at 451. Once again, this Court must analyze whether trial
12   counsel's performance fell below an objective standard of reasonableness. See Strickland, 466
13   U.S. at 688. Second, petitioner must show that "there is a reasonable probability that, but for
14   counsel's unprofessional errors, the result of the proceeding would have been different." Id. at
15   694.

16       The California Court of Appeal determined that trial counsel's performance did not fall
17   below an objective standard of reasonableness after concluding that the court's jury instructions
18   were adequate. The jury was instructed with CALJIC No. 9.40 which defines the crime of
19   robbery; specifically, the jury was instructed that:

20           The defendant is accused in Count Four of having committed the
            crime of robbery, a violation of Section 211 of the Penal Code.
21           Every person who takes personal property in the possession of
            another against the will and from the person or immediate presence
22           of that person accompanied by means of force, fear and with the
            specific intent to permanently deprive that person of the property is
23           guilty of the crime of robbery, a violation of Section 211 of the
            Penal Code.
24
            The word "takes" or "taking" require proof that, number one,
25           taking possession of personal property, and number two, carrying it
            away for some distance, whether slight or otherwise.
26           Immediate presence means an area within the alleged victim's

18

1       reach, observation or control so that he or she could, if not
        overcome by violence or prevented by fear, retain that possession
2       of the subject property.

3       Against the will means without consent.

4       In order to prove this crime, each of the following elements must
        be proved:
5       Number one, a person had possession of property of some value,
        however slight;
6       Number two, the property was taken from that person or from the
        immediate – or from her immediate presence;
7       Number three, the property was taken against the will of that
        person;
8       Number four, the property – the taking was accomplished either by
        force or fear;
9       Number five, the property was taken with the specific intent to
        permanently deprive that person of the property.

10

11    (Reporter's Tr. 455-57.) The jury was also instructed with CALJIC No. 3.31 as the trial judge

12    explained to the jury that:

13      In the crimes charged in Counts One, Three, Four, and attempted
        manslaughter and grand theft of a person, which are lesser crimes
14      thereto, there must exist a union or joint operation of act or conduct
        and a certain specific intent in the crime of the perpetrator – in the
15      mind of the perpetrator. Unless this specific intent exists, the
        crime to which it relates is not committed.
16      The specific intent required is included in the definitions of the
        crimes and allegations set forth elsewhere in these instructions.

17
       (Id. at 449.) As the Petitioner noted in his federal habeas petition, the California Court of Appeal
18
       previously considered the same argument that the Petitioner makes in this case with respect to the
19
       force requirement in the robbery jury instructions in People v. Tapia, 25 Cal. App. 4th 984, 1026-
20
       28, 30 Cal. Rptr. 3d 851 (1994). In Tapia, the defendant alleged that the trial court erred when it
21
       failed to give an additional instruction requested by the defense that at the time of the application
22
       of force, the perpetrator had the specific intent to permanently deprive the victim of the property.
23
       See id. at 1-26-27. In that case, as in Petitioner's case, the trial court instructed the jury using
24
       CALJIC Nos. 9.40 and 3.31. See id. at 1026-27. In Tapia, the California Court of Appeal
25
       specifically found that the jury was not inadequately instructed as the trial court did not need to
26

                                              19

Case 2:08-cv-03053-JAM-TJB Document 31 Filed 09/10/10 Page 20 of 23

give instructions which were covered by other properly given jury instructions. See id. at 1028.

In light of this case law and the fact that the trial court instructed the jury using CALJIC Nos. 9.40 and 3.31, Petitioner's trial counsel's performance did not fall below an objective standard of reasonableness for failing to object to the robbery jury instructions and/or for failing to request a more pinpoint instruction regarding the use of force in the robbery jury charge. Thus, Claim VI is does not warrant this Court granting Petitioner federal habeas relief.

As Petitioner has failed to show that trial counsel was ineffective in Claim VI, it cannot constitute the cause required to overcome his procedurally defaulted Claim V. Furthermore, Petitioner has not presented a credible claim establishing his actual innocence with respect to his robbery conviction, see Calderon, 523 U.S. at 559, and thus cannot demonstrate that failure to consider the procedurally defaulted Claim V on the merits will result in a fundamental miscarriage of justice. See Coleman, 509 U.S. at 729. Accordingly, Petitioner is not entitled to habeas relief on Claim V.

C.   Claim VII

Next, Petitioner asserts that his attempted murder conviction lacked sufficient evidence because "there was no credible evidence beyond a reasonable doubt other than mere conjecture that appellant allegedly attempted to kill Jeanetta Anderson (Pet'r's pet. at p. 68).

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction, if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d at 982 (quoting Jackson, 443 U.S. at 318). A petitioner for a federal writ of habeas corpus "faces a heavy burden when challenging the

20

1  sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

2  Juan H. V. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

3       As noted in supra Part V.A, the victim testified at trial that Petitioner kicked down the

4  door of the apartment where she was staying and told her that he was going to kill her. He then

5  grabbed a kitchen knife and proceeded to stab her several times. The record evidence could

6  reasonably support a finding that Petitioner attempted to kill the victim. Petitioner's

7  insufficiency claim is without merit.

8       D. Claim VIII

9       In Claim VIII, the Petitioner alleges that the trial court failed to properly instruct the jury

10  on attempted murder. Specifically, Petitioner alleges that the trial court failed to instruct the jury

11  regarding the "intent" requirement (Pet'r's Pet. at p. 71). A claim that a state court violated a

12  federal habeas petitioner's due process rights by omitting a jury instruction requires a showing

13  that the error so infected the entire trial that the resulting conviction violated due process.

14  See Henderson v. Kibbe, 431 U.S. 145, 155 (1977); Menendez v. Terhune, 422 F.3d 1012, 1029

15  (9th Cir. 2005).

16       The trial court instructed the jury on both general and specific intent. (Reporter's Tr. at

17  449.) The court explained to the jury that:

18       General criminal intent does not require an intent to violate the
        law. When a person intentionally does that which the law declares
19       to be a crime, he is acting with general criminal intent even though
        he may not know that his act or conduct is unlawful.
20       In the crimes charged in Count One, Three, Four . . . there must
        exist a union or joint operation of act or conduct and a certain
21       specific intent in the crime of the perpetrator – in the mind of the
        perpetrator. Unless this specific intent exists, the crime to which it
22       relates is not committed.

23       The specific intent required is included in the definitions of the
        crimes and allegations set forth elsewhere in these instructions.
24       The defendant is accused in Count One of having committed the
        crime of attempted murder in violation of Section 664/187 of the
25       Penal Code.

26       Every person who attempts to murder another human being is

21

1     guilty of a violation of Penal Code Section 664/187.
      Murder is the unlawful killing of a human being with malice
2     aforethought.

3     In order to prove attempted murder, each fo the following elements
      must be proved:
4     Number one, a direct but ineffectual act was done by one person
      toward – towards killing another human being; and.
5     Number two, the person committing the act harbored expressed
      malice aforethought, namely *a specific intent to kill, unlawfully,*
6     *another human being*.

7     (Reporter's Tr. at 449-50 (emphasis added).) Contrary to Petitioner's assertion, as detailed above

8     the trial court instructed the jury regarding the intent necessary to prove attempted murder.

9     Petitioner cannot show that any purported "omission" so infected the trial that the attempted

10    murder conviction violated Petitioner's due process rights. Therefore, Claim VIII is without

11    merit.

12        E. Claim IX

13        In Claim IX, Petitioner asserts that trial counsel was ineffective for failing to object to the

14    trial court's jury instruction on attempted murder due to the jury instructions failure regarding the

15    "intent" requirement. (Pet'r's Pet. at p. 74.) Trial counsel's inaction regarding this claim does

16    not meet the Strickland standard to show ineffective assistance of counsel. As noted in supra

17    Part V.D, the trial court specifically instructed the jury on the intent required to find the

18    Petitioner guilty of attempted murder. Thus, trial counsel's "omission" did not fall below an

19    objective standard of reasonableness. See Strickland, 466 U.S. at 688. Petitioner is not entitled

20    to relief on Claim IX.

21                                          VI. CONCLUSION

22        For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's

23    application for writ of habeas corpus be denied.

24        These findings and recommendations are submitted to the United States District Judge

25    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days

26    after being served with these findings and recommendations, any party may file written

                                                22

1    objections with the court and serve a copy on all parties.  Such a document should be captioned

2    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3    shall be served and filed within seven days after service of the objections.  The parties are

4    advised that failure to file objections within the specified time may waive the right to appeal the

5    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

6    elects to file, petitioner may address whether a certificate of appealability should issue in the

7    event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules

8    Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

9    when it enters a final order adverse to the applicant).

10    DATED: September 9, 2010

11

12                                   TIMOTHY J BOMMER
                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26